<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 03-4650

————

UNITED STATES OF AMERICA

v.

TYRONE J. SMITH,

<u>Appellant</u>

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cr-00336-01 )
District Judge:  Hon. Sylvia H. Rambo

————

Argued October 5, 2004

Before:  SLOVITER, BECKER and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Filed: April 14, 2005)

————

Matthew M. Robinson   (Argued)
Robinson & Brandt
Cincinnati, Ohio 45242

        Attorney for Appellant

Thomas A. Marino
        United States Attorney
William A. Behe   (Argued)
        Assistant United States Attorney
Office of United States Attorney
Harrisburg, PA 17108

        Attorneys for Appellee


OPINION


SLOVITER, Circuit Judge.

        Tyrone J. Smith appeals from his conviction and sentence for distribution and

possession with intent to distribute 50 grams or more of crack cocaine and 500 grams or

more of cocaine, in violation of 21 U.S.C. § 841(a)(1); use of a communication facility to

facilitate drug trafficking, in violation of 21 U.S.C. § 843(b); and conspiracy to distribute

and possess with intent to distribute 50 grams or more of crack cocaine and 500 grams or

more of cocaine, in violation of 21 U.S.C. § 846.  The District Court had jurisdiction over

this case under 18 U.S.C. § 3231.  This court has appellate jurisdiction pursuant to 28

U.S.C. §1291 and 18 U.S.C. § 3742.

        Smith raises the following seven issues on appeal:

I.      The District Court erred at sentencing in determining the amount of drugs
        properly attributable to Smith.

II.     The District Court erred when it enhanced Smith's sentence for a leadership
        role in the offense.

III.    The District Court erred when it enhanced Smith's sentence for obstruction
        of justice.

2

IV.    The District Court erred when it permitted the in-court identification of Smith by Aaron Rissenger.

V.    Improper questioning by the prosecution of the Government's witnesses denied Smith his right to a fair trial.

VI.    The Government improperly vouched for a key witness during closing arguments.

VII.    The evidence was insufficient to convict Smith of conspiracy.

As will be explained hereafter, we will remand on the first three issues and instead direct our focus on the other issues Smith raises.

## I.

Because we write for the parties who are familiar with the facts in this case, we will not embark on an extended discussion.

At the trial, the Government presented testimony from seven witnesses regarding Smith's drug activities.  Each of the following witnesses testified that he personally bought cocaine and/or crack cocaine from Smith: Brian Chapman (Trial Tr., Vol. III at 445-47); Marcus Carter (Trial Tr., Vol. I at 20-22); Aaron Pitts (Trial Tr., Vol. I at 114); Omar Dykes (Trial Tr., Vol. II at 204-05); and Eric Chambers (Trial Tr., Vol. II at 272-73).  The identification of Smith by these witnesses was not challenged as many of them had known him since childhood.  A number of these witnesses also stated that Smith had intimidated their friends and family in an attempt to prevent these witnesses from testifying against him.  (Trial Tr., Vol. II at 238, 278).

In addition, Aaron Rissinger testified that he had purchased cocaine from Malik

Pacheco at Smith's apartment and at a gas station. (Trial Tr., Vol. II at 330-36). Malik and his brother Isaiah worked for Smith selling drugs. Several witnesses testified that they had purchased drugs from Smith's cousin Mari Anthony, Smith's partner and successor. Wayne Scott, who was in prison with Smith, testified that Smith admitted he had sold drugs to Chapman, that Malik and Isaiah worked for him and received nine ounces of cocaine at a time and that he left two kilos of cocaine and funds with Mari Anthony when he was arrested. (Trial Tr., Vol. I at 73-74, 104).

The Government set up video surveillance at Smith's apartment and at the street corner at 19th and Boas Streets, Harrisburg, Pennsylvania, where some of the drug transactions took place. The videotape evidence from surveillance cameras showed drug transactions. (Trial Tr., Vol. III at 426-29). At a search of Smith's apartment agents recovered a bowl, razor blades with white residue that tested positive for the presence of cocaine base, a portable scale with white residue that also tested positive, a baggie containing baking soda, and other assorted items allegedly used in drug distribution. (Trial Tr., Vol. III at 553-58). During a later search of Anthony's home, officers found cocaine, baking soda and a cooking pot with crack cocaine residue. When officers searched a van driven by Anthony, they found crack cocaine that was still moist and $9,750. The total quantity of drugs seized from the van and Anthony's home was 468 grams of crack cocaine and 464 grams of cocaine hydrochloride. (Trial Tr., Vol. III at 623-27).

Dykes testified that he personally witnessed Smith and Anthony converting

powder cocaine into crack cocaine both at Smith's apartment and his father's home.

(Trial Tr., Vol. II at 203-04).  Dykes also testified that while they were both in the same

block at the Dauphin County Prison, Smith confided in him that he was selling drugs

when he was out on the street and that his cousin, Mari Anthony, was holding the cocaine

for him while he was in prison.  (Trial Tr., Vol. II at 197-202).  This testimony

corroborates that given by Scott.

Smith argues that the testimony of the Government's witnesses is suspect and

cannot be credited because six of the witnesses who testified against him had been

convicted and were in prison, and testified for the Government either because they had or

hoped to be rewarded for their testimony by decreased prison sentences.  Smith's counsel

argued to the jury throughout his closing that it could discount the foregoing testimony.

For example, he stated of the witnesses:

> Maybe they were . . . trying to enhance the benefits that they were going to
> get out of these documents that most – although not all of them had – and
> they were plea agreements that were signed with the government that in
> some cases resulted in significantly reduced charges, in some cases exposed
> the witnesses to substantially less jail time than they might otherwise be
> facing.

May 1, 2003, Trial Tr. at 42-43 (defense's closing argument).

At another point in his closing, counsel stated:

> Why would they lie on him?  I don't know.  There's a lot of reasons, not the
> least of which, of course, is this right here, the plea agreement, the benefit
> that they either expect to derive or in many cases have derived from this.

Id. at 52.

Notwithstanding counsel's persistent effort to convince the jury to discount the testimony of the witnesses against Smith, the jury convicted him on all counts charged. It obviously was not persuaded by Smith's argument that none of the witnesses were credible because they sought the favor of the Government. Following the jury's verdict, Smith was sentenced to a total of 360 months imprisonment. We must view the evidence in favor of the verdict winner, here the Government. United States v. Scott, 223 F.3d 208, 209 n.1 (3d Cir. 2000). The testimony that the Government presented to the jury provided a sufficient record basis to support the jury's verdict finding Smith guilty on all counts of the indictment.

## II.

We turn next to the most troublesome issue on this appeal, the District Court's decision to permit Rissinger to make an in-court identification of Smith over Smith's objection. Rissinger, a drug user and occasional distributor of powder cocaine, (Trial Tr., Vol. II at 331-32), testified that he bought his cocaine from Malik (Trial Tr., Vol. II at 330). When he was arrested by Pennsylvania State Police officers, he agreed to cooperate. (Trial Tr., Vol. II at 338). He was questioned by agents of the Drug Enforcement Agency ("DEA") about his activities and about others who were involved. The DEA agents showed him one photograph, a 6" x 10" black and white full body photo of Smith. They asked him if the man in the photograph was Jamal and he agreed. Jamal is Smith's middle name.

Rissinger did not testify that he bought drugs directly from Smith. Instead, he

6

testified that Smith drove Malik to the drug buys that Rissinger made from Malik.  At trial, Rissinger was asked to identify Smith and testified that "he was the person."  (Trial Tr., Vol. II at 321-23).

The action of the DEA in this regard is indefensible as was the federal prosecutor's action in asking Rissinger to make an in-court identification of Smith under these circumstances.  Both the federal law enforcement officers and the prosecutors are under an obligation to know the applicable legal principles and to adhere to them in practice.

The Supreme Court has held that "[a] pretrial identification procedure violates due process, and requires exclusion of the testimony based on that procedure, if it is 'so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.'  Simmons v. United States, 390 U.S. 377, 384 (1968).  The general inquiry is whether the procedure was unnecessarily suggestive, and if so, whether its corrupting influence outweighs the reliability of the identification testimony."  Burkett v. Fulcomer, 951 F.2d 1431, 1448 (3d Cir. 1991) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188 (1972)).

It is beyond question that the DEA's identification procedure was impermissibly suggestive and created a strong likelihood of misidentification.  See generally Simmons v. United States, 390 U.S. at 383 (stating that showing a witness a "picture of a single individual who generally resembles the person [the witness] saw" is a factor that could lead to misidentification).  At the oral argument before this court, the U.S. Attorney agreed that the procedure followed was unduly suggestive.  Thus, we must consider

7

whether the witness had "an independent basis" for the identification and if this independent basis was of sufficient strength to outweigh any corrupting influence. Burkett, 951 F.2d at 1448. When questioned at trial, Rissinger claimed that his in-court identification of Smith was independent and not influenced by the photograph previously shown to him by the police. (Trial Tr., Vol. II 323-25).

The Supreme Court has identified five factors that must be considered when determining whether a witness had an independent basis for identification. These factors are: (1) the amount of time the witness had to view the criminal during the crimes; (2) their degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Applying these factors, we are unwilling to conclude that there was an independent basis for Rissinger's in-court identification. Rissinger apparently observed Smith on two occasions when Smith was allegedly the driver of the automobile that drove Malik to meet Rissinger to sell him cocaine.[1] Each of these instances was only 45 seconds and his view was hampered by two car windshields. Rissinger's focus was undoubtedly on Malik and not Smith. Moreover, Rissinger could not describe any of Smith's specific

---

[1] Rissenger was vague as to the number of occasions that Smith drove the automobile, testifying first that there were two occasions, then that there were three to four occasions, and again that there were three to six. (Trial Tr., Vol. II at 319-20).

characteristics except to say he "looks about the same as he did two years ago." (Trial Tr., Vol. II at 318, 321).

These facts differ from those present in cases where we found an independent basis for identification. See, e.g., United States v. Emanuele, 51 F.3d 1123, 1136 (3d Cir. 1995) (holding that an independent basis for identification existed where the witness was able to observe defendant from two feet away, for three or four minutes, and recognized him immediately when he was brought into the courtroom); Burkett v. Fulcomer, 951 F.2d 1431, 1448 (3d Cir. 1991) (holding that independent basis existed where victim had a face-to-face confrontation with the perpetrator in her house lasting approximately one-half hour). There is no comparable evidence in this case. In any event, we conclude that there was no independent basis for Rissinger's identification. Therefore, we agree with Smith that the procedure violated his due process rights.

It remains to consider whether permitting Rissinger's in-court identification was harmless error. Once again, we are disappointed that the Government's brief failed to raise a harmless error defense and it was this court that directed the parties to be prepared to address the issue at oral argument. We nonetheless have discretion to consider it. See United States v. McLaughlin, 126 F.3d 130, 135 (3d Cir. 1997). We stated in McLaughlin that in deciding whether to exercise our discretion to consider harmless error vel non, "the controlling considerations are the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district

court." 126 F.3d at 135. In this case, the trial was five days, the issues before the jury were straightforward, and, as we noted above, there was more than sufficient evidence to support the jury's guilty verdict. Therefore, we will consider the question of harmless error despite the Government's failure to raise the issue in its principal brief.

We evaluate the question of harmless error according to the standard enunciated by the Supreme Court in Chapman v. California, 386 U.S. 18, 24 (1967). Under the Chapman harmless error test, the Government must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. McLaughlin, 126 F.3d at 135.

Smith argues that because the Government's case was dependent on the credibility of the testifying witnesses, Rissinger's testimony was crucial. He was the only witness who was not in jail. Smith argues that Rissinger's testimony provided the most persuasive proof of Smith's involvement in drug activity outside of his alleged transactions with Chapman. As we noted before, the jury's evaluation of the testimony of the witnesses notwithstanding their admissions of drug activity and the receipt of certain favors from the Government is reflected in the guilty verdicts.

Examples of instances in which the Supreme Court or this court have found error to be harmless support this conclusion. For example, in Neder v. United States, 527 U.S. 1 (1999), the Supreme Court held that a jury instruction that omitted the materiality element of a tax fraud offense was harmless error because "no jury could reasonably find that Neder's failure to report substantial amounts of income on his tax returns was not 'a

material matter.'" Id. at 16.  Similarly, in United States v. Cross, 308 F.3d 308, 326 (3d

Cir. 2002), this court also found harmless error where the district court admitted evidence

that should have been excluded under Fed. R. Civ. P. 403 for being cumulative.  The

defendants were tried for conspiring to fix hundreds of county cases in return for gifts and

favors.  We stated that once sufficient evidence had been introduced to inform the jury

that the defendants had asked police officers to leave before testifying so that the cases

against them would be dismissed and that they gave police officers various gifts and

favors, much of the additional evidence to that effect should have been excluded as

cumulative under Rule 403.  However, we stated that "[e]ven if the cumulative evidence

prejudiced Appellants to some extent by distracting the jury or by emphasizing events

that could have aroused the jury's passions, we can confidently say that it is 'highly

probable' that the superfluous evidence made no difference in the ultimate view of the

jury.  The evidence supporting the § 241 count was overwhelming." Id.

     In this case, Rissinger's identification of Smith as the driver of the automobile that

brought Malik to the drug transaction pales against the positive identification of Smith as

the direct seller of crack or powder cocaine by five witnesses who knew Smith for years.

The only significance of Rissinger's testimony was defense counsel's attempt to

deprecate the testimony of the other witnesses.  But the jury rejected that argument.  In

light of the numerous witnesses who testified, the surveillance videos and the recorded

phone calls, we hold that although permitting Rissinger's identification was error, it was

harmless.

Smith's remaining issues require little discussion. He argues that there were numerous instances in which the prosecutor asked leading questions and that, when viewed as a whole, this violated his right to a fair trial. Smith made no contemporaneous objections and we thus review the Government's questions for "plain error." To demonstrate plain error, an appellant bears the burden of proving that there was (1) an error (2) that was plain, and (3) that affected substantial rights, usually meaning that the error "must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993).

"Federal Rule of Criminal Procedure 52(b) leaves the decision to correct the forfeited error within the discretion of the court of appeals. . . . [W]e should exercise our discretion to correct the error, where the defendant is actually innocent, or where, regardless of the defendant's innocence or guilt, the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Gov't of Virgin Islands v. Rosa, 399 F.3d 283, 293 (3d Cir. 2005). In the present case, we conclude that even if the prosecutor asked leading questions, such error would not have affected the disposition of the case given the overwhelming evidence of guilt.

Finally, Smith argues that the Government improperly vouched for its witness, Brian Chapman, by making the following statement during closing arguments:

> Brian Chapman came before you. You got to see him as he sat there and testified. He was in his early twenties. Did you get the sense from him that it's a young man whose [sic] really at the cusp of going on a career like some of those others were of crime, or getting himself straightened out and turning his life around?

May 1, 2003, Trial Tr. at 13 (defense's closing argument).

To find vouching, "the prosecutor must assure the jury that the testimony of a Government witness is credible" and that "this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998).  Smith's argument that in the above statement, the prosecutor "assured the jury that Chapman's testimony was credible," and that this assurance was "completely outside of the evidence presented," Appellant's Br. at 42-43, takes the prosecutor's statement out of context.

The Government's statement was part of a list of questions that the prosecutor asked the jurors to ask themselves before they returned their verdict.  The prosecutor did not tell the jury that Chapman was credible, but instead asked the jurors to ask themselves whether or not Chapman was credible.  This does not constitute impermissible vouching.

Smith also argues there was insufficient evidence of a conspiracy.  In order to prove a conspiracy, "[t]he Government needed to show only that [the defendant] conspired with someone – anyone.'"  United States v. Presseler, 256 F.3d 144, 149 (3d Cir. 2001) (quoting United States v. Obialo, 23 F.3d 69, 73 (3d Cir. 1994).

Such evidence was presented in this case by the recorded telephone conversations and the video surveillance which revealed that Isaiah Pacheco would collect money and deliver drugs for Smith, and the testimony of numerous witnesses that Smith conspired with Anthony to distribute drugs.  The evidence presented was sufficient for a rational juror to find that a conspiracy existed.

For the reasons set forth above, we will affirm the judgment of conviction.  On the other hand, Smith's challenges to his sentence raise issues that are covered by the decision of the United States Supreme Court in <u>Booker v. United States</u>, 543 U.S. ___, 125 S. Ct. 738 (2005).  This court has chosen to remand that issue to the District Court for resentencing, and we do so here.

**CONCLUSION**

The judgment of conviction will be affirmed.  The judgment of sentence will be vacated and the case remanded to the District Court for reconsideration of the sentence in light of the <u>Booker</u> decision.