## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : NO.:  1:01-CR-336-01 |
| v. | : |
| | : JUDGE RAMBO |
| **TYRONE SMITH, a/k/a "Manny"** | : |

## SENTENCING MEMORANDUM

**Dennis E. Boyle, Esquire**
Supreme Court I.D. No.  49618
1525 Cedar Cliff Drive
Camp Hill, PA  17101
Telephone:  (717) 737-2430
Facsimile:  (717) 737-2452
Email:  deboyle@verizon.net

Counsel For:  Tyrone Smith

Dated:  July 26, 2005

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     PROCEDURAL HISTORY AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    Procedural History  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.    Statement of facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    The *Ex Post Facto* Consideration of the Due Process Clause prevent
             this Court from enhancing Mr. Smith's sentence for facts that
             were neither found by a jury nor admitted by Mr. Smith . . . . . . . . . . 5

             1.    *Booker* imposes a greater sentence on defendants than
                   was permitted pre-*Booker* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             2.    *Booker's* remedial opinion was unexpected and indefensible
                   under existing case law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.    The Supreme Court's re-drafting or reformulation of the U.S.
             Sentencing Guidelines resulted in an implied legislative change to
             the guidelines which prevented the courts from imposing the
             change retroactively to Mr. Smith  . . . . . . . . . . . . . . . . . . . . . . . . . 14

       C.    Considering the sentencing purposes of 18 U.S.C. §3553(a),
             *i.e.*, retribution, deterrence, incarceration and rehabilitation, Mr.
             Smith's sentence should be reduced . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EXHIBIT "A"

## <u>TABLE OF AUTHORITIES</u>

**<u>Statutes and Rules:</u>**                                                                      **<u>Page(s):</u>**

18 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. §3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C.A. §3553(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


**<u>Cases:</u>**

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2438 (2001) . . . . . . . . . . . . . 8, 9

*Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) . . . . . . . . . . . . 5, 8, 9

*Booker v. United States*, 543 U.S. ___, 125 S.Ct. 738 (2005) . . . . . . . . . . . 1, 5, 12

*Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697 (1964) . . . . . . . . . 6, 7, 11

*Calder v. Bull*, 3 Dall 386, 390, 1 L.Ed. 648 (1798) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dale v. Haeberlin*, 878 F.2d 930 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Helton v. Fauver*, 930 F.2d 1040 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hollawell v. Gillis*, 65 Fed. Appx. 809, (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446 (1987) . . . . . . . . . . . . . . . . . 10, 14

*Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647 (1989) . . . . . . . . . . . . . . 12

*Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002) . . . . . . . . . . . . . . . . . . . . . 9

*Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693 (2001) . . . . . . . . . . . . 6, 7, 11

*Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913 (1993) . . . . . . . . . . . . . . 12

*United States v. Mark*, 430 U.S. 188, 97 S.Ct. 990 (1977) . . . . . . . . . . . . . . . . . 11

**Miscellaneous:**

USSG §2D1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    PROCEDURAL HISTORY AND FACTS:

### A.    **Procedural History:**

On October 25, 2001, the Defendant, Tyrone Smith, appeared for his initial appearance on a sealed Indictment alleging Conspiracy to Distribute and Distribution of Cocaine and Cocaine Base in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. Mr. Smith proceeded to trial on April 29, 2003.  After a week-long trial, he was convicted of all of the counts with which he had been charged in the Indictment.  A Pre-Sentence Report was prepared, and Mr. Smith subsequently objected to: (1) the amount of drugs; (2) an enhancement for his leadership role in the offense; (3) an enhancement for obstruction of justice; and, (4) his consideration as a career offender. Mr. Smith also requested a downward departure for medical reasons.  The objections were all denied by the Court, and Mr. Smith was sentenced to 360 months incarceration.

Mr. Smith timely appealed both his conviction and his sentence.  On April 14, 2005, the U.S. Court of Appeals for the Third Circuit issued an Opinion and Order affirming this Court with respect to certain evidentiary rulings; however, with respect to three (3) sentencing arguments, the Court remanded the case for re-sentencing in accordance with the Supreme Court's decision in *Booker v. United States*, 543 U.S. ___, 125 S.Ct. 738 (2005).

By Order dated July 6, 2005, this Court appointed undersigned counsel to represent Mr. Smith and directed him to file a Statement of Issues at Re-Sentencing Proceeding.  This Memorandum is submitted on behalf of that Statement.

### B.    Statement of Facts:

The disputed factual issues in this case center upon the quantity of cocaine base and cocaine attributable to Mr. Smith, his leadership role in the offense and whether he obstructed justice.  This Court, however, has already resolved these issues in the prior proceeding, and the Third Circuit has not disturbed any of this Court's factual conclusions.

However, it is Mr. Smith's position that at the time this Court conducted a fact-finding hearing, it did so under mandatory sentencing guidelines.  The guidelines, as they existed, did not permit a trial court to increase a sentence based upon facts which had never been found by a jury nor admitted by a defendant.  In this case, it is the Defendant's contention that the trial court enhanced Mr. Smith's sentence based upon a quantity of drugs which had not been found by a jury, a leadership role which had not been found by a jury, and for obstruction of justice, even though that fact had likewise not been found by a jury.

2

Except for these three (3) facts, Mr. Smith accepts the Court's previous findings.  With respect to these three (3) facts, however, it is Mr. Smith's belief that they are unsupported by a jury finding and therefore cannot be considered by the Court.

**II.    ISSUES:**

A.    Whether *ex post facto* consideration of the Due Process Clause of the U.S. Constitution prevent the Court from enhancing Smith's sentence for drug weights, for a leadership role in the offense and for obstruction of justice where these factors were neither found by a jury nor admitted by Mr. Smith?

(Suggested Answer in the Affirmative).

B.    Whether the Supreme Court's redrafting or reformulation of the United States Sentencing Guidelines resulted in an implied legislative change to the guidelines which prevent this Court from improving the changes retroactively upon Mr. Smith?

(Suggested Answer in the Affirmative).

C.    Whether the sentencing purposes of 18 U.S.C. §3553(a)(2), *i.e.*, retribution, deterances, incapacitation and rehabilitation, suggest that Mr. Smith should be given a sentence below the advisory guideline range?

(Suggested Answer in the Affirmative).

## III.    DISCUSSION:

### A.    The *Ex Post Facto* Consideration of the Due Process Clause prevent this Court from enhancing Mr. Smith's sentence for facts that were neither found by a jury nor admitted by Mr. Smith.

When Tyrone Smith was initially sentenced by this Court to 360 months on November 24, 2003, he was sentenced under the mandatory guidelines which established a minimum and maximum sentencing range based upon facts determined by a trial court using a preponderance of the evidence standard.  While his appeal was pending, the Supreme Court decided the case of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), which held that judicial findings of fact which increased a criminal defendant's sentencing range violated the Sixth Amendment right to trial by jury.  As a result, under *Blakely*, a defendant could only be sentenced for facts as found by a jury.  Since the quantity of drugs, Mr. Smith's role in the offense and his obstruction of justice in the present case had not been found by a jury, *Blakely* would prevent these factors from being used against Mr. Smith.

On January 12, 2005, the Supreme Court decided the case of *Booker v. United States*, ___ U.S. ___, 125 S.Ct.738(2005).  *Booker* recognized that the mandatory U.S. Sentencing Guidelines which required longer sentences for judicially determined facts violated the Sixth Amendment.  In a separate opinion, however, the Court

reformulated the guidelines making them, in effect, advisory. *Id*. at 765-66. It is Mr. Smith's position that the *Booker* decision subjected him to increased sentencing beyond that permitted prior to *Booker* and that, for this reason, it violated the *Ex Post Facto* consideration inherent in the Due Process Clause. *See, Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 1697 (2001).

The *Ex Post Facto Clause* of the U.S. Constitution, by its own terms, applies only to the legislative branch of government; however, these same principles apply to the judiciary. *Rogers v. Tennessee*, 532 U.S. at 456, 121 S.Ct. at 1697; however, "limitations on *ex post facto* judicial decision - making are inherent in notions of due process." *Id.* As the Court made clear in *Bouie v. City of Columbia*, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 1702 (1964), "if a . . . legislature is barred by the *Ex Post Facto* Clause from passing a law, it must follow that [. . . a court] is barred by the Due Process Clause from achieving precisely the same result by <u>judicial construction</u>." (emphasis added).

As Justice O'Conner made clear in *Rogers*, however, the precise requirements of the *Ex Post Facto* Clause do not apply strictly to the courts. *Id.* at 459, 121 S.Ct. at 1699. Rather, *ex post facto* consideration of due process rest " . . . on core due process concepts of notice, forseeability and, in particular, the right to fair warning

6

as those concepts bear on the constitutionality of attaching criminal penalties to what had previously been innocent conduct." *Id.* at 458-59, 121 S.Ct. at 1698-99. Thus, the Court held that:

> . . . a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retro-active effect, only where it is 'unexpected and indefensible by reference to law which had been expressed prior to the conduct at issue.'

*Id.* at 462, 121 S.Ct. at 1700.

*Rogers* itself involved the abolition of the year and a day rule, a common law rule restricting prosecution for homicide where the victim died more than a year and a day after the perpetrators attack, by the Tennessee Supreme Court. Where the judicial decision invokes a matter of statutory law, such as the U.S. Sentencing Guidelines, the same principle applies. *See, Bouie v. City of Columbia*, 378 U.S. at 357, 84 S.Ct. at 1697. As the Court stated in *Bouie*, " . . . if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue, [the] construction must not be given retroactive effect." *Id.* at 352, 84 S.Ct. at 1702.

Although *Bowie* and *Rogers* both dealt with the criminalization of conduct which had previously not been prohibited by state criminal law, *ex post facto*

7

considerations have traditionally included increasing the potential sentence for conduct which had previously been considered less serious. *See, Calder v. Bull*, 3 Dall 386, 390, 1 L.Ed. 648 (1798); *see also, Hollawell v. Gillis*, 65 Fed. Appx. 809, (3rd Cir. 2003); *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir. 1989). In fact, in *Helton v. Fauver*, 930 F.2d 1040 (3rd Cir. 1991), the Third Circuit found that a New Jersey Supreme Court decision that subjected a juvenile to increased punishment was unexpected and unforeseen and therefore violative of due process *ex post facto* considerations. *Id.* at 1044.

1.   ***Booker* imposes a greater sentence on defendants than was permitted pre-*Booker*.**

Prior to *Booker*, the plain statutory language of the sentencing guidelines and unambiguous case law stated that the guidelines were binding and that, absent aggravating circumstances, a judge could not sentence a defendant to a sentence greater than the top of the guideline maximum. In *Blakely v. Washington*, 542 U.S.296, 124 S.Ct. 2531 (2004), the Court expanded its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2438 (2001) by holding that not only may a trial judge not increase a sentence beyond the statutory maximum, a trial judge was not

permitted to increase the sentence <u>at all</u> based upon <u>judicially</u> found facts.  As the

Court stated:

> . . . the relevant 'statutory maximum' is not the maximum
> sentence a judge may impose after finding additional facts,
> but the maximum he may impose *without* any additional
> findings.  When a judge inflicts punishment that the jury's
> verdict alone does not allow, the jury has not found all the
> facts 'which the law makes essential to the punishment.' *Id.*
> at 4 (emphasis in original) (quoting 1 J. Bishop, Criminal
> Procedure §87, p. 55 (2d Ed. 1872).

*Blakely v. Washington*, 542 U.S. at ___, 124 S.Ct. at 2537; *see also*, *Ring v. Arizona*,

536 U.S. 584, 602, 122 S.Ct. 2428 (2002).  The Court therefore found the State of

Washington's sentencing scheme unconstitutional.

In Tyrone Smith's case, the jury found Mr. Smith guilty of distributing 50

grams or more of crack cocaine or 500 grams or more of powder cocaine.[1]  Fifty (50)

grams of cocaine base would have yielded an offense level of 32; 500 grams of

cocaine would have yielded an offense level of 26.  USSG §2D1.1.  Thus, the jury

findings would have subjected Mr. Smith to a sentencing guideline range of 210-262

---

[1] The Indictment charged Mr. Smith with distributing 50 grams or more of cocaine base <u>and</u> 500 grams of cocaine; however, it is believed that the court would have instructed the jury that a distribution of either would have constituted the offense.  *See Apprendi v. New Jersey*, 530 U.S. at 466, 120 S.Ct. at 2438.

months based upon the cocaine base or 120-150 months based upon powder cocaine.[2]

This Court, however, found that Mr. Smith had distributed well over 3.5 kilograms of crack cocaine. In addition, the Court found that Mr. Smith was a supervisor and imposed a two (2) point enhancement and that he had obstructed justice and imposed an additional two (2) point enhancement. The Court therefore calculated a guideline range of 360 months to life. The judicial fact-finding, however, violated *Blakely*, and the appropriate guideline range should have been 210-262 months.

The net effect of the Supreme Court's decision in *Booker*, however, was to subject a criminal defendant to a much wider range of sentences by making the guidelines advisory. Therefore, prior to *Booker*, a criminal defendant in Mr. Smith's position faced a maximum sentence of 262 months. Under *Booker*, however, he would face a maximum sentence of life in prison. In *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446 (1987), the Supreme Court found that the retroactive application of Florida's revised sentencing guidelines (which increase guideline ranges) violated the *Ex Post Facto* Clause of the U.S. Constitution. As *Miller* makes clear, Congress could not have changed the guidelines to subject Mr. Smith to greater punishment;

---

[2] The career offender guidelines, should they be applied, would create a higher guideline range.

therefore, courts cannot make changed to the guidelines retroactive by virtue of the Due Process Clause.  *See, United States v. Mark*, 430 U.S. 188, 191-92, 97 S.Ct. 990, 992 (1977).


### 2.    *Booker's* remedial opinion was unexpected and indefensible under existing case law.

As has already been noted, *ex post facto* principles of the Due Process Clause apply to the judiciary when the decision is unexpected and indefensible by reference to prior law.  *Rogers v. Tennessee*, 532 U.S. at 456, 121 S.Ct. at 1697; *Bouie v. City of Columbia*, 378 U.S. at 347, 84 S.Ct. at 1697.  The issue which must be addressed, therefore, is whether *Booker*'s remedial opinion was unexpected and indefensible by reference to prior law.  It should be stated at the outset that labeling a decision as "indefensible by reference to the law which had been expressed prior to the conduct at issue" is not synonymous with saying the decision was wrong or poorly reasoned. Indeed, *Booker* is obviously the correct view of the guidelines and would appear to be a well reasoned decision.  Mr. Smith's position is merely that the decision does not comport with established case law at the time the opinion was rendered and therefore should not be applied retroactively.

11

*Booker* actually contains two majority opinions.  The first opinion authored by Justice Stevens found the mandatory sentencing guidelines based upon judicially found facts to be violative of the Sixth Amendment.  This decision was not unexpected.  Indeed, it followed the Court's holding in *Blakely* and *Apprendi*.  The second opinion by Justice Breyer striking the mandatory aspects of guidelines and thereby raising the maximum sentence was unexpected.  In fact, the plain language of 18 U.S.C.A. §3553(b)(1) requires that the guidelines be mandatory, and the Supreme Court itself had upheld the mandatory nature of the guidelines on two (2) previous occasions.  *See*, *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913 (1993), and *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647 (1989).  The remedial opinion in *Booker*, therefore was unexpected.

The conclusion of the remedial majority in *Booker* was also indefensible by reference to prior case law or the statute itself.  No party had argued that 18 U.S.C.A. §3553(b)(1) was unconstitutional. *See, Booker*, ___ U.S. at ___, 125 S.Ct. at 777 (the "novelty of this remedial maneuver perhaps explains why <u>no party or amicus curiae</u> to this litigation has requested the remedy the Court now orders.") (Stevens, J. dissenting) (emphasis original).  In fact, Justice Breyer did not cite a single statute or prior decision to support his construction of the Sentencing Reform Act.  In fact, there

is nothing in the *Booker* decision itself that even suggests there was "any constitutional infinity inherent" in §3553(b)(1).

Since the remedial aspect of the *Booker* decision was not expected and was indefensible by reference to prior law, *ex post facto* of the Due Process Clause requires that the increased sentencing not be given retroactive effect. There is, of course, no *ex post facto* considerations which would prevent a trial court from applying the advisory guidelines retroactively, so long as the defendant is not subjected to a sentence that exceeds the prior sentencing range based upon judicially found facts. In other words, Mr. Smith could be sentenced to no more than 262 months under *Blakely*, and he cannot now be sentenced to more than that time. However, because *Booker*'s holding renders the guidelines advisory, this Court could impose a lower sentence without implicating *ex post facto* principles. Since Mr. Smith faces a mandatory ten (10) year minimum, this Court could impose any sentence between 120 months and 262 months.

**B.**    **The Supreme Court's re-drafting or reformulation of the U.S. Sentencing Guidelines resulted in an implied legislative change to the guidelines which prevented the courts from imposing the change retroactively to Mr. Smith.**

Although the *Ex Post Facto* Clause only applies to legislative action, it is Mr. Smith's position that the *Booker* Court's unique approach to statutory construction effectuated an implied legislative change to the guidelines that enhanced the sentences a trial court could have imposed violated the *Ex Post Facto* Clause. *Miller v. Florida*, 482 U.S. at 431, 107S.Ct. at 2452. As Justice Breyer indicated in *Booker*, "we have examined the statute in depth to determine Congress's intent <u>in light of todays holding</u>." ___ U.S. at ___, 125 S.Ct. at 767. The Court therefore read into the Sentencing Reform Act a savings clause which had the effect of changing the statute as of the date of the Court's decision. Therefore, it would appear that the Court effectuated a legislative change in violation in the *Ex Post Facto* Clause.

**C.    Considering the sentencing purposes of 18 U.S.C. §3553(a), _i.e._, retribution, deterrence, incarceration and rehabilitation, Mr. Smith's sentence should be reduced.**

At Tyrone Smith's initial sentencing hearing, Joshua Lock, Esquire, ably argued a number of facts that, in the view of the defense, mitigated Mr. Smith's conduct.  Unfortunately, since the trial court could only consider the guidelines, it was limited in its ability to consider these matters.  The Court must now consider, in addition to the guidelines, the nature and circumstances of the offense and the circumstances of the Defendant.  18 U.S.C. §3553(a).  It is submitted that neither the circumstances of the offense nor Mr. Smith's personal history require a sentence of 360 months.  In fact, it is believed that the needs of society can be protected with a far shorter sentence.

Rather than restating arguments already presented to the Court, a copy of Mr. Lock's Sentencing Memorandum is appended hereto as Exhibit "A" and incorporated herein by reference.

15

**IV.    CONCLUSION:**

For the reasons set forth above, it is respectfully requested that Tyrone Smith

be re-sentenced to a term of imprisonment substantially below the advisory guideline

range.

/s/ Dennis E. Boyle
_____

**Dennis E. Boyle, Esquire**
Supreme Court I.D. No.  49618
1525 Cedar Cliff Drive
Camp Hill, PA  17101
Telephone:  (717) 737-2430
Facsimile:  (717) 737-2452
Email:  deboyle@verizon.net

Counsel For:  Tyrone Smith

Dated:  July 26, 2005

# CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email address(es):

William A. Behe, Esquire
U.S. Attorney's Office
william.behe@usdoj.gov

/s/ Penny A. Rogers
Penny A. Rogers, Paralegal

Dated:  July 26, 2005