IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL NO. 1:CR-01-336-01 |
| | : | |
| v. | : | |
| | : | |
| TYRONE SMITH a/k/a "Manny" | : | |

# M E M O R A N D U M

## I.     Introduction

Before the court is a motion filed by Defendant Tyrone Smith pursuant to 28 U.S.C. § 2255 in which he raises issues of the competency of trial and appellate counsel. Those issues will be addressed after a brief summary of the procedural history of this case.

## II.     Procedural History

Smith was convicted by a jury of distributing and possessing with the intent to distribute 50 grams or more of crack cocaine, and 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1); using a communication facility in furtherance of drug trafficking in violation of 21 U.S.C. § 843(b); and conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine, and 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. § 846.

Smith was sentenced by this court to 360 months imprisonment. On April 14, 2005, the Third Circuit Court of Appeals affirmed the judgment of conviction but vacated the sentence and remanded the case for resentencing.[1] On

---

[1]The instant case was on appeal when the United States Supreme Court decided *Booker v.*
(continued...)

remand, this court imposed a sentence of 240 months imprisonment. Smith again

appealed. The court of appeals affirmed the sentence. Smith filed a petition for writ

of certiorari which was denied.

In April 2009, Smith filed the instant motion pursuant to 28 U.S.C.

§ 2255. Following service of the petition, counsel was appointed to represent Smith

at a hearing. After a lengthy continuance, a hearing was held on December 2, 2009.

Post hearing briefing concluded on March 28, 2010, and the matter is now ripe for

disposition.

## III.      Discussion

### A.  Legal Standard

A claim for ineffective assistance of counsel is evaluated under the

standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The standard

has two prongs. Petitioner must show (1) that counsel's performance was deficient

and (2) that the deficient performance prejudiced the defense. *Id.* at 687. The first

prong requires petitioner to show that counsel made errors "so serious that counsel

was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* This

showing can be made by demonstrating that the attorney's performance was

unreasonable under prevailing norms. *United States v. Day*, 969 F.2d 39, 42 (3d Cir.

1993). The second prong requires petitioner to show that the errors were

"sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the petitioner must

show "a reasonable probability that, but for counsel's unprofessional errors, the

---

[1](...continued)
*United States*, 543 U.S. 220 (2005), which resulted in the remand.

result of the proceedings would have been different." *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000).

### B. Ineffective Assistance of Counsel Claims

Smith alleges ineffective assistance of counsel claims against both trial and appellate counsel. The claims are as follows: (1) trial counsel failed to object to the admission of evidence of other crimes and failed to request notice of the Government's intent to offer such evidence; (2) trial counsel failed to object to the Government asking one of its witnesses to give an opinion about the credibility of any defense witness who would testify in a certain way; (3) trial counsel failed to request a curative or limiting instruction with respect to the jury learning that Smith was incarcerated; (4) trial counsel failed to call various witnesses at trial; (5) trial counsel failed to request various jury instructions; and (6) appellate counsel failed to raise the aforesaid issues on appeal.

### 1. Evidence of Other Crimes

Smith's claims regarding the admission of evidence of other crimes fall into two categories: (a) testimony concerning threats to witnesses; and (b) Chapman's testimony concerning sales by Smith of marijuana and ecstasy.

### a. Testimony of Threats by Smith

Smith claims that on a number of occasions witnesses testified to threats by Smith through others that his counsel should have objected to and should have sought the court to exclude. Specifically, Smith mentions the testimony of Tamica Tolbert, Eric Chapman and Omar Dykes, all of whom testified that they were threatened by others allegedly on Smith's behalf, as well as Wayne Scott who testified that Smith had threatened anyone who testifies against him. (*See* Trial Tr. ("TT") Vol. 3 at 421-422 (Tolbert); Vol. 3 at 473-75 (Chapman); Vol. 2 at 208-09 (Dykes); Vol. 1 at 77 (Scott).) Additionally, Smith points to the testimony of Aaron

Pitts who testified at trial that Smith told him that he was trying to get Chapman to "not show up or pay him off." (TT at 124.)

Smith claims that all of this testimony violates Federal Rule of Evidence 404(b). In *United States v. Krauss*, 2009 WL 1313296*5 (E.D. Pa.), the court held that "a defendant's attempts to threaten or intimidate a witness may be introduced without running afoul of rule 404(b) because such attempts reflect consciousness of guilt." (Citing *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir.1993).)

It is clear from the briefs and the transcript that the threats testified to by Trina Smith, Chapman, Dykes and Scott constitute hearsay and, therefore, were objectionable. Defense counsel Joshua Lock's memory of the trial was very vague, which is understandable in light of the fact that the trial was in April 2003 and the habeas hearing was in December 2009. Moreover, Mr. Lock had no file as it was given to post trial counsel and was never returned. (Tr. of Habeas Hr'g, Doc. 486 at 30.)

Nonetheless, at the 2255 hearing, Mr. Lock's testified that his strategic preference is to limit the number of times he objects to the absolute minimum necessary, unless provoked. (*Id.* at 34.) He further testified that his general strategy in this trial was to impeach the Government's witnesses' credibility because of the number of informants that were testifying. (*Id.* at 33.) Combined, this makes for an effective trial strategy because one attempts to make the witnesses out to be liars, rather than objecting to their testimony and planting a seed in the jurors' minds that there may be something that they have to tell that defense counsel does not want the jury to hear. Trial counsel's primary concern was dealing with the overwhelming evidence against his client. (*Id.* 38-40.) In light of this, the strategy to not object and have a whole-scale attack on the credibility of each informant was not unreasonable.

4

### b.  **Sales by Smith of Marijuana and Ecstacy**

Smith claims this testimony was in violation of Federal Rule of
Evidence 404(b) which provides that evidence of other acts must have a proper
evidentiary purpose and be relevant under Rule 402(3).  In *United States v. Soliman*,
813 F.3d 277 (4th Cir. 1987), the court held that "[e]vidence should not be treated as
'other crimes' evidence when the evidence concerning the crime charged are
inextricably intertwined." (*Id.* at 279 (citations omitted).)  In addition, that court
held that "[t]he policies underlying the rule are simply inapplicable when some
offenses committed in a single criminal episode become 'other acts' because the
defendant is indicted for less than all of his actions."  *Id.* (citing *United States v.*
Aleman, 592 F.2d 881, 885 (5th Cir. 1979)).

The testimony of Chapman related to his early association with Smith
and how that association evolved into cocaine dealings.  The marijuana dealings
were closely intertwined with the eventual cocaine deals.  There was no violation of
Federal Rule of Evidence 404(b).

### 2.  **Witness Opinion Regarding Credibility of Defense Witnesses**

Smith argues that the Government improperly attacked the credibility of
a hypothetical defense witness when it asked Marcus Carter the following:

> Q    Let me ask you in general, if a witness were to come
> in and testify that it is uncharacteristic of Mr. Smith,
> the defendant, to talk about his case or anything,
> would that be credible?
>
> A    No.

(TT, Vol. 1 at 61-62.)  Out of context, this question appears random and out of place.
However, placed in its proper context the question loses much of its shock value.
The question was asked by the Government on redirect after Smith's counsel

questioned Carter on cross examination regarding whether Smith ever talked in prison about his case. On redirect, the Government followed up on this line of questioning and Carter testified that Smith boasted about his case all of the time in prison, and that he constantly boasted about how he would beat the case. (*See id.*) In response to this, the Government asked the question recited above, which asks whether it would be believable if a witness were to testify that Smith did not talk about his case.

While the question was no doubt objectionable, it was not directed towards the credibility of a specific witness. At the 2255 hearing, trial counsel could think of no reason why he did not object to this question. However, even assuming that the question should have been objected to, Smith bears that burden of demonstrating that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000). He has failed to do so. Smith makes no argument as to what harm or prejudice he suffered. Indeed, perhaps Smith has not made this argument because he cannot. As the Third Circuit Court of Appeals recognized on Smith's first direct appeal, there was "overwhelming evidence of guilt" presented by the Government. *See United States v. Smith*, 127 Fed. Appx. 608, 613 (3d Cir. 2005). Accordingly, Smith has not demonstrated any prejudice in the Government having asked this question and his trial counsel's failure to object.

### 3. Failure to Request Curative Instruction Concerning Reference that Tyrone Smith Was Incarcerated

The jury learned through several witnesses that Smith was incarcerated in Dauphin County Prison. Smith argues that his trial counsel should have requested a cautionary instruction with respect to this incarceration. However, part of the Government's theory was that Smith, while incarcerated, continued to operate a drug ring on the outside through Mari Anthony. Anthony's sales would be attributed to Smith through the operation of the conspiracy. The jury was entitled to know why and how Anthony became involved. Furthermore, the testimony of Carter, Scott, and Pitts relate statements by Smith while in prison in which Smith implicates himself in the crimes charged. In light of this, had a cautionary instruction been requested that court would likely not have granted one. As such, Smith can show no prejudice due to his counsel's failure to request such an instruction.

### 4. Failure to Call Witnesses

#### a. Mari Anthony

When asked why he did not call Mari Anthony, Mr. Lock replied "I never had a discussion with a represented party in my career. I don't know who Mari Anthony's lawyer was. I didn't discuss it with him through his attorney." (Trans. of Habeas Hearing at p. 24.) When asked if he had a tactical reason for not calling Anthony to testify, Mr. Lock replied, "It never came up." (*Id.*)

Mari Anthony testified at the habeas hearing that if he would have been called at Smith's trial, he would have testified that he and Smith had no involvement with each other. Assuming Anthony had been called, he would have been subjected to possible examination of his drug dealings, and his record as a drug dealer. There was the possibility that audio and video tapes would be played in which he is identified as being involved with Smith. The court cannot say one way or the other

how this would have affected the outcome of the proceedings, and, thus, Smith has not shown that there was a reasonable probability that had Mari Anthony been called the outcome of the proceedings would have been different.

### b. Tyrone Smith, Sr., Sherman Cunningham, Kim Smith

Smith argues that his trial counsel should have called his father, his sister, and his uncle as witnesses on his behalf. However, during the trial, Kim Smith, Tyrone Smith's sister, was in North Carolina, and, trial counsel testified at the 2255 hearing that his client wanted no exposure for any of his family members. "Tyrone did not want to expose his family to any risk." (Tr. of Habeas Hr'g at 22.) Tyrone denies he told Lock not to call his father. (*Id.* at 93.)

The weight of credibility goes to Mr. Lock. This court has had many professional dealings with Mr. Lock who has always been forthright with the court and had has no hesitation to admit a fault or omission. He has an excellent reputation for professionalism.

Sherman Cunningham testified at trial as a defense witness. At the habeas hearing, counsel for Smith questioned Mr. Lock, and Mr. Lock answered as follows:

> Q   Omar Dykes accused Mr. Smith's uncle of being involved in drugs and making drug runs for Tyrone. Was there a reason for not questioning Sherman Cunningham about that while he was on the stand?
>
> A   None that I can think of as I sit here now, because Sherman, I've known for a long time and I would have no reluctance about subjecting him to cross-examination on possible drug activities. None.

(Tr. of Habeas Hr'g at 20.) One could infer from that response that Lock would not have objected to the government questioning Cunningham on the issues raised by

the Dykes testimony. In any event, neither side questioned Cunningham about drug distribution.

If Cunningham had been questioned, he may have denied drug dealing and thereby impeached Dykes' testimony. He could have raised a Fifth Amendment claim and refused to answer the question if his testimony would have implicated him. It is unknown what impact his questioning would have had on this issue. Furthermore, Smith could have, but did not, call Cunningham as a witness in his habeas proceeding. Accordingly, like previous witnesses, Smith has not shown that there was a reasonable probability that had Cunningham been asked these questions that the outcome of the proceedings would have been different. In weighing the probabilities, it is Smith's burden of demonstrating that but for the alleged error the proceedings would be different. Smith has not met this burden.

### c. **Tyrone Smith and Right to Testify**

At the habeas hearing, Smith testified that he does not remember whether he was told that it was entirely his decision whether or not to testify at trial. (Tr. of Habeas Hr'g at 78.) In contrast, trial counsel testified that "all decisions on whom to call and whether or not an accused is going to testify is ultimately the defendant's and not the attorney's. I've never presumed to usurp that responsibility." (*Id.* at 28.) In response to the question, "Did you ever tell Tyrone that it was completely his decision whether or not to testify?" Counsel replied, "I don't recall having that discussion with Tyrone. I don't think Tyrone's testifying was an issue that was addressed in this matter." (*Id.* at 29.) Thus, Smith has not met his burden that his trial counsel was deficient on this issue.

### 5. **Request for Jury Instructions**

Mr. Lock has admitted he submitted no proposed jury instructions. Smith suggests the following instructions should have been given: (1) no adverse

inference to be drawn from Smith's failure to testify instruction; (2) the indictment was not evidence instruction; (3) an addict instruction; (4) an informant and accomplice instruction; and (5) an instruction that the quantity of drugs on the verdict form had to be found beyond a reasonable doubt.

During *voir dire* of the jury, they were instructed by the court as follows:

> In criminal cases, the law presumes that the defendant is innocent until proven guilty. In this regard, the law requires that the government prove each and every element of the crime charged beyond a reasonable doubt. The defendant is not required to produce any evidence on his own behalf but may rely upon the status of the record as presented by the government. This also means that a defendant does not have to testify. The fact that a defendant does not testify cannot be considered for any purpose in deciding a defendant's guilt or innocence. Is there anyone who cannot or will not accept and apply these principles of law?

During the same *voir dire*, the jury was advised as follows:

> The sole purpose of an indictment is to serve as an accusation or charge which the United States makes against the defendant. It serves to inform the defendant of the crime with which he is charged. The indictment is not evidence against the accused and affords no inference of guilt. The government has the burden of proof to establish built beyond a reasonable doubt.

Thus, the jury was made aware of these two important principles.

This court would not have given an addiction charge because there was no evidence that any witness was addicted. The court would have given such an instruction if the evidence showed a witness was addicted to or an abuser of drugs. Nevertheless, this court is not required to give such an instruction. *See United States v. Miles*, 2002 WL 31501847 (3d Cir. 2002). In the absence of any evidence that any witness was an addict or abuser, such instruction would not have been given.

As to an instruction on informants and/or accomplices, such instruction is discretionary. Failure to give the instruction, if not requested, is not plain error. *United States v. Wright*, 921 F.2d 42, 47 (3d Cir. 1990). Even Smith, in his brief in support of the instant motion, recognizes that a "polluted source is not an essential element of the charge, it is a phrase 'which a trial court might in its discretion use when requested by the defendant.'" (Def's Br. in Supp., Doc. 488 at 15) (citing *United States v. Bobb*, 471 F.2d 491, 500 (3d Cir. 2006); *United States v. DeLarosa*, 450 F2d 1057, 1061 (3d Cir. 1971)).

The court did instruct generally on the credibility of witnesses. Therefore, the court finds no prejudice to Smith by not giving this charge.

Smith claims that counsel should have requested an instruction that the quantity of drugs on the verdict slip had to be found beyond a reasonable doubt. Smith claims that nowhere in the instruction does the court attach the beyond a reasonable doubt standard to the quantity of drugs. In the portion of the charge headed "Intent to Distribute Defined" the court charged in part that "you must find beyond a reasonable doubt, that the defendant possessed a quantity of cocaine and cocaine base, . . . ." (TT, Charge to Jury at 19.) This may have been the only part of the charge that advised the jury that the quantity had to be found beyond a reasonable doubt, but the jury was so advised and the jury had a copy of the charge for their review during deliberations. Thus, the claim that the charge was lacking in this element is without foundation.

### 6. Appellate Counsel

Defendant claims appellate counsel was incompetent for not raising on appeal the issues discussed above. For the reasons stated above, Defendant's claims of incompetency of trial counsel are lacking in merit; therefore, this same conclusion applies to appellate counsel.

**IV.     Conclusion**

In the event that this court is in error on its assessment of the competency of counsel, such incompetency was not prejudicial. The Government, in its brief, cites to the overwhelming testimony supplied by Brian Chapman, Marcus Carter, Wayne Scott, Aaron Pitts, Omar Dykes, Eric Chambers and Aaron Reisinger. Smith claims that the assistant United States attorney, in his brief in opposition to the § 2255 motion, merely cited to facts set forth in the presentence report, which information was taken from the prosecutor – thereby implying that the facts are not the true facts. The court has read the testimony of Chapman (TT, Vol. 3 at 437); Carter (TT, Vol. 1 at 16); Scott (TT, Vol. 1 at 62); Pitts (TT, Vol. 1 at 109); Dykes (TT, Vol. 2 at 194); Chambers (TT, Vol. 2 at 269); and Reisinger (TT, Vol. 2 at 328). The testimony matches the facts set forth in the presentence report.

Furthermore, as mentioned previously, the Third Circuit Court of Appeals, in its opinion on the first appeal in this case, stated: "In the present case, we conclude that even if the prosecutor asked leading questions, such error would not have affected the disposition of the case given the overwhelming evidence of guilt." 127 Fed. Appx. 608, 613 (3d Cir. 2005). Even if counsel's inactions did not measure up to what might be expected, in light of the overwhelming evidence against Smith, there simply was no prejudice resulting from the alleged errors. An appropriate order will be issued.

                                                  s/Sylvia H. Rambo
                                                  United States District Judge

Dated:  May 19, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CIVIL NO. 1:CR-01-336-01** |
| | : | |
| **v.** | : | |
| | : | |
| **TYRONE SMITH a/k/a "Manny"** | : | |

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion filed pursuant to 28 U.S.C. § 2255 is **DENIED**.  This court declines to issue a certificate of appealability.  The Clerk of Court shall close the file.

s/Sylvia H. Rambo
United States District Judge

Dated:  May 19, 2010.